SWINDELL–DRESSLER CORPORA-
TION, Petitioner,

v.

Honorable Edward DUMBAULD, Judge
of the United States District Court,
Western District of Pennsylvania, Re-
spondent.

No. 13866.

United States Court of Appeals
Third Circuit.

Argued June 22, 1962.

Decided Sept. 25, 1962.

As Amended Oct. 10, 1962.

See also 199 F.Supp. 40.

268

Judd N. Poffinberger, Jr., Pittsburgh, Pa. (Kirkpatrick, Pomeroy, Lockhart & Johnson, Pittsburgh, Pa., on the brief), for Swindell-Dressler Corp., petitioner.

Henry B. Waltz, Jr., Greensburg, Pa., for intervenor, Central Rigging and Supply Company.

Before BIGGS, Chief Judge, and GANEY and SMITH, Circuit Judges.

BIGGS, Chief Judge.

This case comes before us on a statement of agreed facts but some supplementation and correction of those facts is required, as will appear hereinafter. Central Rigging and Contracting Corporation of Connecticut (Central) sued the J. E. Miller Transfer and Storage Company (Miller) in the District Court for the Western District of Pennsylvania at Civil Action No. 61-257 (257). Central Rigging and Contracting Corporation of Connecticut v. J. E. Miller Transfer and Storage Company, D.C., 199 F. Supp. 40.[1] An amended complaint was filed on August 7, 1961, alleging that Cen-

tral had delivered certain machinery to Miller at Paden City, West Virginia, to be transported by Miller to Martinsburg, West Virginia. Central further alleged that Miller had delivered the machinery in a damaged condition, the damage having occurred while the machinery was in Miller's custody. Jurisdiction was based on diversity only. Miller filed an answer to the amended complaint on August 8.

On September 25, 1961, Central brought suit in the court below at CA No. 61-565 (565) against Swindell-Dressler Corporation (Swindell), jurisdiction again being based on diversity of citizenship and jurisdictional amount. In this suit Central sought to recover a balance alleged to be due it on a contract for services rendered by Central to Swindell in dismantling a brick kiln in Paden City, West Virginia, and moving it to Martinsburg in that state. The kiln appears to have been part of the machinery which was the subject of the suit at 257. None of the services were performed in Pennsylvania. On October 12, Swindell filed an answer to this complaint.

On October 24, 1961, Miller at 257 filed a motion to change the venue of the suit and to transfer it to the United States District Court for the Northern District of West Virginia.

On November 7, 1961, Central filed a petition to consolidate the suit at 565 with the suit at 257 for the purposes of pretrial and trial. The petition stated that there were questions of fact common to both suits and that the parties in the two suits had engaged in a series of transactions to arrange for the relocation of a brick kiln in Martinsburg. Swindell, of course, was not a party to the suit at 257, and did not take part in any proceedings in that case.

On November 9, 1961, Judge Dumbauld entered an order transferring 257 to the United States District Court for the Northern District of West Virginia.[2]

1. This number is printed in the petitioner's appendix as CA 61-256, but since CA 61-256 in the court below is an entirely different suit it is obvious that the correct designation of the suit (one of the two with which we are dealing) is CA 61-257.

2. The court below, by Judge Dumbauld, also entered two more orders transferring this case. See note 4, infra.

According to the statement of agreed facts Judge Dumbauld granted this motion without a hearing. The legality of this transfer is, of course, not before us here.

About one month later, on November 29, 1961, the clerk of the court below gave written notice to counsel for Central, Swindell and Miller that Central's petition for consolidation would be heard on Monday, December 18, 1961, at 10 A.M. Neither Central nor Swindell had filed a motion for change of venue in 565. The motion for consolidation of 565 and 257, made by Central, was not withdrawn and therefore remained pending after the order had been made transferring 257 to the Northern District of West Virginia.

On November 13, 1961, Henry B. Waltz, Jr., Esquire, attorney for Central, addressed a letter to the clerk of the court below regarding 257 and 565. In this letter Mr. Waltz stated that he had "recently received" a copy of an order entered by Judge Dumbauld on November 9, 1961, ordering 257 transferred to the Northern District of West Virginia as the result of a petition for transfer filed by Robert E. Wayman, Esquire, counsel for Miller. Mr. Waltz also said in his letter:

"I believe you may recall that Mr. Wayman and I appeared at the Federal Building for the purpose of presenting the motion orally and for the purpose of my orally resisting the motion. At that time I served an Answer to Mr. Wayman's petition upon Mr. Wayman and had him accept service on the original of the Answer. *However, I neglected to file the original of the Answer.* Consequently Judge Dumbauld apparently acted on Mr. Wayman's motion as not being opposed.

"I believe you will also recall that prior to the entry of the Order by Judge Dumbauld I filed a Motion to Consolidate Civil Action No. 61–257 and Civil Action No. 61–565.

"It was my understanding that Mr. Wayman's Petition to Transfer Civil Action No. 61–257 and my Petition to Consolidate Civil Action No. 61–257 and Civil Action 61–565 would both be argued before Judge Dumbauld in December.

"*I find myself in the embarrassing position of endeavoring to consolidate an action transferred to West Virginia with one remaining to be tried in the Western District of Pennsylvania. Apparently, this situation has resulted from my failure to file the original of my Answer to the Petition to Transfer.*

"I enclose herewith the original of the Answer to the Petition to Transfer and request that you file the same. I would greatly appreciate being advised as to what, if any suggestions you may have for having Mr. Wayman's motion listed for argument and the Order already entered by Judge Dumbauld withdrawn at least until the time of argument." (Emphasis added.)

To this letter Judge Dumbauld replied on November 14, 1961, as follows:

"Dear Mr. Waltz:

"I have your letter of November 13, 1961, addressed to the Clerk of Court regarding Central Rigging v. Miller, Civil Action 61–257, and Central Rigging v. Swindell, Civil Action 61–256.

"As you state, I have entered an order transferring Civil Action No. 61–257 to the Northern District of West Virginia.

"*In justice to Mr. Wayman and the Clerk, I will state that the Court did not grant Mr. Wayman's motion upon the theory that it had been consented to.*

"The Court granted the motion in the exercise of judicial discretion after satisfying itself by inspection of the record that the nexus with Pennsylvania in that action was so tenuous that it would not warrant taking up the trial time of this Court in a congested metropolitan district.

"If your petition to consolidate Civil Action 61–565 comes before me, I shall either deny it, or, if the circumstances indicate that the two cases are genuinely connected and should be tried together, *I will transfer the other case to the Northern District of West Virginia if a motion to that effect is presented.*

"Please confer with opposing counsel and advise what disposition you think best to be made of your motion to consolidate." (Emphasis added.)

According to the statement of agreed facts and the record, on December 14, 1961, without notice to counsel for the parties and without a hearing, Judge Dumbauld entered an order at both 257 and 565, consolidating the two cases "for the purpose of all further proceedings therein" and transferring both cases to the Northern District of West Virginia "in accordance with this Court's order of November 9, 1961, transferring No. 61–257."[3]

This was done despite the fact that the court below on November 29, 1961, had scheduled a hearing for December 18, 1961, on Central's petition to consolidate the two cases. When that day came, however, there was no hearing on the petition for consolidation. The statement of agreed facts states in this connection: "Counsel for Central and counsel for Swindell appeared in court for the hearing. The petition was not called for hearing, and upon inquiry by counsel when the Court was about to adjourn, Judge Dumbauld advised them that the petition had been disposed of by his order of December 14, 1961."

At Judge Dumbauld's request the pleadings in 565 were returned to the clerk of the court below by the clerk of the United States District Court for the Northern District of West Virginia in a kind of escrow.[4]

Judge Dumbauld has filed an answer to the rule to show cause issued by this court in this case. He did not file a formal brief. He has also sent a letter, dated May 8, 1962, to the clerk of this Court, citing two authorities and ex-

---

3. The docket entries at 257 show the following under date of November 9, 1961: "Order entered granting deft's motion for change of venue and transferring this case to the U. S. District Court for the Northern District of West Virginia. (Dumbauld, J.)"

The docket entries at 257, under date of November 13, 1961, are as follows: "Pursuant to Order entered, deft's motion for change of venue is hereby granted and this case is transferred to the U. S. District Court for the Northern District of West Virginia and all original papers have been forwarded to the Clerk. James H. Wallace, Jr., Clerk."

The docket entries at 257, under date of December 14, 1961, are as follows: "Order entered directing that this action be consolidated with CA 61–565 for purpose of all further proceedings therein and transferred to the U. S. District Court for the Northern District of West Virginia * * * (Dumbauld, J.) this paper forwarded to the clerk. 12/15/61"

See note 2, supra.

4. The letter, returning the papers to the Clerk of the court below, is as follows:

"UNITED STATES DISTRICT COURT
Office of the Clerk
Northern District of West Virginia
Wheeling, West Virginia
December 28, 1961

"Mr. James H. Wallace, Jr.
Clerk United States District Court
Western District of Pennsylvania
Pittsburgh 30, Pennsylvania

"In Re: Central Rigging and Contracting Corporation of Connecticut, a Connecticut corporation,
v.
Swindell-Dressler Corporation
Civil Action File No. 1073–W
(Your number 61–565)

"Dear Sir:
"In response to your letter of December 19, 1961, I am sending you herewith the complete court file in the above captioned case, being papers 1 through 12, inclusive. "Judge Paul is willing that the papers be returned to your office for inspection by the attorneys for the parties with the understanding that no original paper would be sent to the Circuit Court of Appeals, and that no paper would be added or removed from the file. Will you please re-

pressing an admonition.[5] Central has been permitted to intervene in these proceedings and its position seems in general to support the action taken by Judge Dumbauld.

We point out that Miller is taking no part in this proceeding and Miller has not been brought upon the record in any way. Miller has made no objection to the transfer of either case or to their purported consolidation. Swindell is the party which alleges that it is aggrieved by the actions of the court below. It is asserted by Swindell that the trial judge of his own volition and without any motion or petition by one or any of the parties, and without hearing, and without giving Swindell notice or an opportunity to be heard, exercised the powers vested in a United States District Court by Section 1404(a), Title 28 U.S.C.,[6] and transferred 565 to the United States District Court for the Northern District of West Virginia. Swindell further asserts that without a hearing on the petition to consolidate, though a time and place for a hearing had been set and though Judge Dumbauld already had ordered 257 transferred and the papers had been sent to the transferee court, the order of consolidation and transfer of 565 of December 14, 1961, was entered. We will deal with the defenses asserted in the Judge's answer and by the intervenor at a later point in this opinion.

We are aware, of course, of the difficulties under which the United States District Court for the Western District of Pennsylvania has labored for several years. It has had a heavy backload of undecided private civil cases and has been short of judge-power due to vacant judgeships and illness. Its able judges have worked hard and successfully, with the aid of a skilled and diligent staff and of a co-operative bar, to reduce the pending caseload. The court has now brought its dockets to a point where they are practically current. For this happy result the public, the bar and this court should be and are thankful. But nonetheless we must point out that we still have the duty to correct too hasty or improvident action taken by a district court of this circuit.

We possess the power in the case at bar by virtue of Section 1651, Title 28 U.S.C., the so-called "All Writs" section, to review the actions taken by the respondent Judge. We may exercise the power conferred on us by that section to issue a writ of mandamus in a proper case to further justice and in aid of our appellate jurisdiction. La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957); United States v. Mayer, 235 U.S. 55, 35 S.Ct. 16, 59 L.Ed. 129 (1914). The writ of mandamus is to be employed only under extraordinary circumstances. See In re Josephson, 218 F.2d 174, 183 (1 Cir. 1954). Circum-

---

turn the file to Wheeling as soon as possible.

"Will you please acknowledge receipt of the above papers on the attached copy of this letter, addressing me at Wheeling.

Yours very truly,
R. M. Barrett, Clerk,
By /s/ J. C. STRICKLING
J. C. Strickling
Chief Deputy Clerk"

5. Judge Dumbauld's letter is as follows:
"As respondent in the above-styled case, I hereby waive the privilege of filing a brief; believing that, in the Answer heretofor filed, the circumstances in justification of the District Court's order of transfer are sufficiently set forth to permit evaluation thereof in the light of applicable principles of law, and merely bringing to the attention of the Court of

Appeals the cases of All States Freight Inc. v. Modarelli, 196 F.2d 1010 (C.A. 3, 1952), and Hoffman v. Blaski, 363 U.S. 335, 345, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960), which seem to me to demonstrate emphatically the inexpediency and impolicy of appellate court immixtion in the determination of preliminary interlocutory matters such as the time and place of trial. Otherwise a legislative measure intended to facilitate the convenient disposition of litigation will instead become an instrument of delay."

6. Section 1404(a) is as follows: "Change of venue. For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

stances justifying the use of the **writ are** present when a trial court has exceeded its authority or has acted without jurisdiction or has failed to exercise jurisdiction in a proper case. See Ex parte United States, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916); Webster Eisenlohr, Inc. v. Kalodner, 145 F.2d 316 (3 Cir. 1944), certiorari denied, 325 U.S. 867, 65 S.Ct. 1404, 89 L.Ed. 1986 (1945). It is, we believe, well settled that the question whether the court below acted without jurisdiction in transferring the suit at 565 is an issue properly before this court on an application for a writ of mandamus. See Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960); La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957); Ex Parte Republic of Peru, 318 U.S. 578, 63 S.Ct. 793, 87 L.Ed. 1014 (1943); Philip Carey Mfg. Co. v. Taylor, 286 F.2d 782, 784 (6 Cir. 1961). Here, the question, as we shall see, is one of peculiar public importance, involving due process of law. Cf. Ex parte Republic of Peru, supra, 318 U.S. at pp. 582, 586–587, 63 S.Ct. 793.

■ In All States Freight, Inc. v. Modarelli, 3 Cir., 196 F.2d 1010 (1952), we made it plain that this court will not interfere, by mandamus, with the transfer of a case under Section 1404(a) when the transferring court, in the exercise of a proper discretion, has considered the interests stipulated in the statute and after such consideration has ordered the transfer. We there pointed out that the district court must determine on a sufficient showing of facts that the transfer would be for the convenience of the parties and witnesses and in the interest of justice. For an excellent example of the application of the statutory standards, see Goodman v. Columbia Steel & Shafting Co., 171 F.Supp. 718 (D.C.W.D.Pa. 1959).[7] But we have not said that a writ of mandamus will never issue to pre-

vent the transfer of a case to another district. In Paramount Pictures, Inc. v. Rodney, 3 Cir., 186 F.2d 111, certiorari denied, 340 U.S. 953, 71 S.Ct. 572, 95 L.Ed. 687 (1951), we granted the writ, not to review the exercise of a court's discretion, but rather to indicate that that discretion should be exercised. Similarly, where the trial court has acted without jurisdiction in granting a transfer, the rule of All States Freight is not a barrier to the issuance of the writ.

■■ The respondent Judge's answer points out that "the writ or writs of mandamus and of prohibition which the relator herein seeks to impetrate is an extraordinary remedy and is not to be used as a substitute for or the equivalent of an interlocutory appeal * * *". With this well-established principle we are in complete accord. It is clear that the order of December 14, 1961, complained of in this proceeding, was a nonappealable interlocutory order. Cf. Deepwater Exploration Co. v. Andrew Weir Ins. Co., 167 F.Supp. 185, 187 (D.C. E.D.La.1958). The answer also alleges that the Judge's order of transfer and consolidation was made in the exercise "of sound judicial discretion" and was a just and proper disposition of the two matters "pending before the court". The respondent points out that the two lawsuits arose out of a single transaction relating to the dismantling, loading and transporting of the brick kiln and that the disposition of 565, of necessity, must await the disposition of 257. As to the propriety of transfer, the answer alleges that no part of the route of transportation of the brick kiln lay in Pennsylvania and that, while venue in the Western District of Pennsylvania at 257 was based on the presence in Pittsburgh of a soliciting agent of the carrier, " * * * 257 did not arise out of or concern" any transactions or business done within the Commonwealth of Pennsylvania. The

---

**7.** The "Reviser's Notes" to Section 1404(a) states, "The new subsection requires the court to determine that the transfer is necessary for convenience of the parties and witnesses, and further, that it is in

the interest of justice to do so." To say this is to state no more than the intent of Congress made manifest in the words of the statute itself. See Section 1404(a) (reviser's notes), Title 28 U.S.C.

answer states that it was for the foregoing reasons that the court transferred 257 to the United States District Court for the Northern District of West Virginia, and that this reasoning appears in a letter sent on November 14, 1961 to the attorney for Central in which the respondent Judge stated: "The Court granted the motion [to transfer 257] in the exercise of judicial discretion after satisfying itself by inspection of the record that the nexus with Pennsylvania in that action was so tenuous that it would not warrant taking up the trial time of this Court in a congested metropolitan district". The answer further alleges that the court below had not lost jurisdiction of 257 by its orders of November 9 and November 13, 1961, transferring that case, because the clerk had gotten the papers back from the West Virginia court. Next, the answer states that the court treated the motion for consolidation as the equivalent of a motion for transfer under Section 1404(a) and that counsel for Central, Mr. Waltz, did not object to the order of December 14, 1961, when, on December 18, 1961, he and counsel for Swindell both were present under the circumstances stated in this opinion. Finally, the judge contends that the present cause is moot since the transfer has already taken place.[8]

We point out that in the letter of the respondent Judge of November 14, 1961, he indicated that he would transfer 565 to the Northern District of West Virginia "if a motion to that effect is presented". At the time this letter was written, at least, he did not seem to think that a motion for consolidation of two causes was the equivalent of a motion to transfer one of them under Section 1404(a). Second we cannot perceive how the court below could regain jurisdiction of 257 simply by having the papers returned to it by the transferee court in escrow or even by having them returned without any limited custodianship. An order of the transferee court retransferring the case would obviously be necessary, and no order was made here by the United States District Court for the Northern District of West Virginia. Third, the decision of the respondent Judge that the nexus of 257 and 565 with Pennsylvania was tenuous may be an entirely proper conclusion but it was expressed only in his answer in this proceeding and no other determination was made by the Judge that the convenience of the parties or the witnesses or the interest of justice would be served by the transfer of 565. Nor do we think that the fact that counsel for Central did not object to a transfer made on December 14, when he was present in court to be heard on the consolidation petition on December 18, can be deemed to be the waiver of the plaintiff's venue privilege at No. 565 and it certainly can have no effect upon the rights of Swindell, the aggrieved party here. And finally, we are of the view that a cause of action pending in one jurisdiction cannot be consolidated with a cause of action pending in another jurisdiction. Rule 42(a),[9] Fed.R.Civ.Proc., 28 U.S.C., will not permit such a course. The cases to be consolidated must be "pending before the court".[10]

But quite aside from the foregoing, no notice, hearing or opportunity to be heard as to transfer under Section 1404(a) was afforded Swindell prior to the order of transfer of December 14, 1961. In denying Swindell any hearing or opportunity for hearing the court be-

---

8. Other defenses are urged by Judge Dumbauld but we think they need not be set out here.

9. Rule 42(a) provides: "Consolidation. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such or-ders concerning proceedings therein as may tend to avoid unnecessary costs or delay."

10. See Facen v. Royal Rotterdam Lloyd S.S. Co., 12 F.R.D. 443 (D.C.S.D.N.Y. 1952) ; Schwartz v Kaufman, 46 F.Supp. 318 (D.C.E.D.N.Y.1940) ; 5 Moore, Federal Practice, 2 ed., Section 42.02, footnote 11.

low denied it procedural due process of law guaranteed to it by the Fifth Amendment. We point out that there was neither motion nor petition pending for transfer of 565, for as we have said, we cannot treat the petition to consolidate as a motion for transfer. The plain and unsubtle fact which is paramount here is that there was ɔ notice or hearing before the order of December 14, 1961, purporting to effect the transfer of 565, was entered. As Judge Maris said for this court in In re Central R. Co. of New Jersey, 3 Cir., 136 F.2d 633, 639 (1943), certiorari denied sub nom. Pitney v. New Jersey, 320 U.S. 805, 64 S.Ct. 437, 88 L.Ed. 486 (1944): "The right to notice and a hearing is one of ancient origin and by the due process clauses of the 5th and 14th amendments has been safeguarded to all against deprivation by the federal government and the states, respectively. The fact that the state [of New Jersey] had notice and appeared is not sufficient to satisfy the requirement of due process. It must also have been afforded an opportunity to be heard. Mr. Justice Field, in Windsor v. McVeigh, 1876, 93 U.S. 274, pages 277, 278, 23 L.Ed. 914 * * * said: 'That there must be notice to a party of some kind, actual or constructive, to a valid judgment affecting his rights, is admitted. Until notice is given, the court has no jurisdiction in any case to proceed to judgment, whatever its authority may be, by the law of its organization, over the subject-matter.' " The Supreme Court went on to say, in Windsor v. McVeigh, id. supra, at p. 282, "The doctrine invoked by counsel, that, where a court has once acquired jurisdiction, it has a right to decide every question which arises in the cause, and its judgment, however erroneous, cannot be collaterally assailed, is

undoubtedly correct as a general proposition, but, like all general propositions, is subject to many qualifications in its application. All courts, even the highest, are more or less limited in their jurisdiction: * * * Though the court may possess jurisdiction of a cause, of the subject-matter, and of the par..es, it is still limited in its modes of procedure. * * * It must act judicially in all things * *".

The matter is briefly put in 16A C.J.S. Constitutional Law § 622, pp. 824–825, as follows: "The right to a hearing or an opportunity to be heard within the requirement of the due process clause ordinarily includes the right of a party to be present, during the taking of testimony or evidence, and to appear or be represented by counsel. Such right also includes the opportunity to know the claims of his opponent, hear evidence introduced against him, cross-examine witnesses, introduce evidence in his own behalf, and present proper argument as to law and fact," citing, *inter alia*, Londoner v. City & County of Denver, 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103 (1908), and Federal Communications Commission v. WJR, 337 U.S. 265, 69 S.Ct. 1097, 93 L.Ed. 1353 (1949).

■ In the light of the circumstances we must hold that the court below when it entered the order of transfer of December 14, 1961, lost jurisdiction and did not enter a valid order of transfer. Cf. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). If we are correct in our conclusion, the case at bar is not moot.[11]

Ordinarily we would find it unnecessary to issue the writ of mandamus as prayed for and would rest content to make our views known as we have en-

11. A local rule or standing order of court which would automatically stay a transfer under Section 1404(a) for a stated number of days would be of value in a situation such as is presented by the instant case. In several cases we have observed that this seems to be the *ad hoc* practice of the United States District Court for the Eastern District of Pennsylvania. It would, of course, be more desirable if such a procedure were established by formal rules or standing orders in all districts of this circuit. Such a procedure would permit the transfer with "all deliberate speed" and yet allow a reasonable time for application to the Court of Appeals for mandamus and a stay.

deavored to do in this opinion, knowing that the court below, of its own volition, would take the steps necessary to rectify what this court deems to be error. But in the case at bar two separate circuits are involved, the Fourth Circuit and our own. To avoid what conceivably might become an unseemly conflict with our brethren of the Fourth Circuit, it seems necessary, or at least very desirable, to have our order directing the writ to issue reviewed by the Supreme Court, if it should see fit to do so, so that all questions raised in this proceeding may be settled with finality.

An order will be entered directing a writ of mandamus, as prayed for by the petition, to issue directing the respondent Judge to vacate and set aside the order of December 14, 1961.